SEALED BY ORDER OF THE COURT

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Northern District of California

| | |
|---|---|
| United States of America<br>v.<br>**VICTOR CASTANEDA**<br><br>*Defendant(s)* | Case No.<br><br>**CR 18 70042 MAG** |

FILED
JAN 17 2018
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE, CALIFORNIA

E-filing

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __August 31, 2017__ in the county of __Santa Clara__ in the __Northern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Count One: 21 U.S.C. Sections 841 (a)(1) and (b)(1)(A) | Distribution of and possession with intent to distribute a controlled substance, to wit: methamphetamine<br><br>PENALTIES:<br>Mandatory imprisonment of 10 years to life; maximum $10 million fine; not less than five years supervised release; mandatory $100 special assessment fee |

This criminal complaint is based on these facts:

Please see attached affidavit.
NO BAIL ARREST WARRANT REQUESTED

Approved as to form: Katie Griffin, AUSA  */s/ Katie Griffin*

☑ Continued on the attached sheet.

*/s/ Colleen Dettling*
Complainant's signature

FBI Special Agent Colleen Dettling
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __1/17/18__

City and state: __San Jose, CA__

*/s/ Howard R. Lloyd*
Judge's signature

Hon. Howard R. Lloyd, U.S. Magistrate Judge
*Printed name and title*

## Affidavit of FBI Special Agent Colleen Dettling

I, Colleen Dettling, a Special Agent with the Federal Bureau of Investigation (FBI), am currently assigned to the San Francisco Division, San Jose Resident Agency, being duly sworn, depose, and say:

### INTRODUCTION AND AGENT BACKGROUND

1. I have been an FBI Special Agent since July 2009. As a Special Agent, I am authorized to investigate violations of the laws of the United States, and I am a law enforcement officer with authority to execute arrest and search warrants under the authority of the United States.

2. During my training to become a Special Agent, I attended the FBI's Training Academy. There, I attended 23 weeks of New Agent Training classes, during which I received formal instruction on a wide variety of criminal violations, as well as the methods by which such violations are investigated. Additionally, I have attended various formal California Law Enforcement certified training classes on topics such as drug trafficking organizations, street gangs, and successful management of confidential informants (or, "CIs").

3. I am currently assigned to the San Francisco Division of the FBI seated in the San Jose Resident Agency. I am assigned to a unit that specializes in the investigation of drug trafficking and violent crime in Santa Clara County and surrounding areas. While employed in my current assignment, I have participated in numerous drug-related investigations, which have included the utilization of CIs, controlled purchases, physical and electronic surveillance, and the execution of various federal and state search warrants involving narcotics trafficking.

4. The statements contained in this affidavit are based on my own training and experience and personal involvement in this investigation, as well as information relayed to me by other law enforcement officers involved in the investigation. I have also derived information from

recorded telephone calls and information from cooperating witness(es) who have knowledge of the criminal activities of the target subjects and their co-conspirators.

5.  Because this affidavit is submitted for the limited purpose of securing an arrest warrant, I have not included each and every fact known to me that supports probably cause. Rather, I have set forth those facts that I believe are sufficient to support the issuance of the requested arrest warrant for Victor CASTANEDA for the distribution of a Schedule II controlled substance, to wit: methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).

## STATEMENT OF PROBABLE CAUSE

6.  A Confidential Human Source (CHS) reported to state and federal law enforcement that an individual identified as Victor CASTANEDA was involved in the sale and distribution of controlled substances, including methamphetamine.

7.  To the Affiant's knowledge, the CHS has convictions for: California Penal Code 212.5(a) (robbery or attempted robbery); California Penal Code 11378 (possession for sale of methamphetamine); California Penal Code 182(a) (conspiracy to a commit a crime); California Penal Code 11351 (possession of a controlled substance for sale); and California Penal Code 11352 (selling or transporting controlled substance). The CHS is cooperating with law enforcement in the hope of consideration during anticipated federal prosecution for his/her role in the narcotics conspiracy with CASTANEDA and others. No promises have been made to CHS. Law enforcement has made numerous attempts to corroborate the CHS' information with regards to the instant investigation, including the use of tracker warrants, ping warrants, surveillance, subpoenas, independent source information, public databases, and recorded meetings and telephone calls. Agents were largely successful in such corroboration. However, FBI agents have recently learned from DEA New Jersey that the CHS may have distributed kilogram-quantities of

methamphetamine while purporting to cooperate with law enforcement and without alerting law enforcement to such activity. Prior to this discovery, and in exchange for and due to the CHS' participation in this investigation, the CHS had been paid a total of $58,050.00 by the FBI and Sunnyvale Police Department.

8. During CHS debriefing, CHS relayed to law enforcement that CASTANEDA has significant connections to drug traffickers in Mexico and elsewhere. CASTANEDA purchases large amounts of methamphetamine from these individuals, which he transports to various locations or "stash houses" in California, including location(s) in the Bay Area. Typically, the methamphetamine is transported to the stash houses in liquid form, as the methamphetamine is hidden in the gas tanks of the vehicles used for transportation. The liquid methamphetamine is converted at the stash house locations to crystal methamphetamine. Once this process is complete, the crystal methamphetamine (estimated to be approximately 50-100 pounds, twice per month) is transported to other locations for future sales. The CHS said that CASTANEDA typically does not transport the methamphetamine himself, though CASTANEDA travels to Mexico frequently to coordinate these efforts.

9. At the direction of law enforcement, the CHS was utilized to conduct a controlled purchase of approximately one kilogram of methamphetamine from CASTANEDA at a location in San Jose, CA, which is within the Northern District of California. The details of this transaction are summarized in the following paragraphs.

10. On August 31, 2017, at approximately 3:30PM, the CHS made a recorded telephone call to CASTANEDA and asked whether CASTANEDA still had any methamphetamine for sale. CASTANEDA said he did, and that a kilogram would cost $4,800. The CHS and CASTANEDA agreed to meet later in the day.

11. Prior to meeting with CASTANEDA, the CHS met with law enforcement and was provided with $4,800 by law enforcement to purchase one kilogram of methamphetamine.

12. At approximately 3:47PM on the same date, the CHS arrived at the agreed-upon location in San Jose to meet with CASTANEDA. CASTANEDA arrived at the same location at approximately 4:10PM. CASTANEDA was the driver and sole occupant of a silver Toyota Tacoma truck, known by law enforcement to be used by CASTANEDA. Following CASTANEDA's arrival, at approximately 4:11PM, the CHS entered CASTANEDA's vehicle. Inside CASTANEDA's vehicle, the CHS provided $4,800 to CASTANEDA in exchange for a shoebox presumably containing one kilogram of methamphetamine. This meeting was audio and video recorded.

13. Following this exchange, CHS drove away in his/her vehicle and met with law enforcement. Law enforcement retrieved a shoebox from the front passenger seat of the CHS' vehicle, which contained two clear plastic ziplock bags of a clear crystalline substance believed to be methamphetamine. This substance was later submitted to the DEA laboratory, which tested the substance and found it to have a net weight of 995.3 grams of actual methamphetamine.

14. I know methamphetamine to be a Schedule II controlled substance.

## CONCLUSION

15. Based on all of the foregoing, I respectfully submit that there is probable cause to believe that CASTANEDA has violated Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

16. I further request that the Court seal this affidavit, application, warrant, and other papers filed in connection with this application. This affidavit concerns an investigation that is not presently known to the targets or to the public generally, and premature disclosure could cause

the targets of this investigation to flee, cause evidence to be destroyed, and seek to influence witnesses or otherwise obstruct the investigation or prosecution of these individuals.

_____
Colleen Dettling
Special Agent, Federal Bureau of Investigation

Sworn to before me this
17 day of January, 2018

_____
HONORABLE HOWARD LLOYD
United States Magistrate Judge