# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>VICTOR CASTANEDA,<br><br>Defendant. | Case No. 18-cr-00047-BLF-1<br><br>**ORDER GRANTING THE GOVERNMENT'S MOTION FOR REVOCATION OF AN ORDER FOR PRETRIAL RELEASE**<br><br>[Re: ECF 11] |

Before the Court is the United States of America's ("Government") motion for revocation of an order for pretrial release of Defendant Victor Castaneda ("Castaneda"). *See* ECF 11 ("Mot."). The Government contends that Castaneda is a flight risk, and challenges the decision of Magistrate Judge Nathanael Cousins at a detention hearing on February 8, 2018, ordering Castaneda's release from custody—with numerous conditions—pending trial in this drug trafficking matter. Castaneda opposes the motion, arguing that Judge Cousins' pretrial release order was appropriate under the applicable law and the circumstances of this case. *See* ECF 14 ("Opp'n").

The Court held a hearing on the Government's motion on February 13, 2018. At the hearing, the Court heard oral argument and factual proffers from defense counsel and the Government. The Court also heard from Castaneda's wife, Debbie Alegria ("Alegria"), as well as representatives from Pretrial Services, all of whom informed the Court's decision regarding pretrial detention.

For the reasons that follow, as well as those stated on the record at the February 13, 2018 hearing, the Court GRANTS the Government's motion for revocation of Judge Cousins' order for pretrial release. The Court finds that pretrial detention of Castaneda is required, as no condition or combination of conditions exists that will reasonably assure Castaneda's appearance in these criminal proceedings.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The charges against Castaneda in this case arise from an ongoing investigation by the Federal Bureau of Investigation ("FBI"), the Sunnyvale Department of Public Safety ("SDPS") and the Drug Enforcement Administration ("DEA"). *See* Mot. at 3.  The investigation revealed Castaneda's involvement in a drug trafficking operation, including the purchase, transportation, manufacture, and storage of large amounts of methamphetamine and other controlled substances. *Id*.  For example, the investigation revealed that Castaneda would purchase and import large amounts of methamphetamine to the United States and transport it in liquid form to "stash houses" in California, where it would be converted to crystal methamphetamine.  *Id*. at 4.

Through a confidential human source ("CHS"), the investigators determined that one of Castaneda's stash houses processed approximately 200 pounds of methamphetamine per month. *Id*.  The investigation further revealed the existence of multiple stash houses in California, one of which was located in a residential neighborhood.  The Government reports that the stash house caught on fire on May 27, 2017.  *Id*.  In August and September 2017, the CHS also made several controlled purchases of methamphetamine from Castaneda and his co-defendant Trinidad Martinez ("Martinez").  The Government proffered that it has audio and video recordings of calls and meetings where Castaneda discussed his narcotics-related activity and his frequent travel to Mexico, as well as his recruitment and direction of female load drivers to import methamphetamine into the United States. *Id*. at 4-5.  The Government describes Castaneda as playing a "leadership role" and overseeing the operation of this narcotics operation.  *Id*. at 5.

The Government also proffered that Castaneda's drug trafficking activities involve frequent travel to Mexico. *Id*. at 5.  From January 1, 2017 through the present, Castaneda entered the United States from Mexico on thirty-three (33) separate occassions.  *Id*.  As evidenced by the Pre-Bail Report submitted by the United States Pretrial Services Office ("Pretrial Services"), after his arrest, Castaneda confirmed to Pretrial Services that he travelled to Mexico two to three times per month, and that he would stay in Mexico for approximately one week on each visit.  Thus, at least in the three years prior to his arrest, Castaneda spent approximately two to three weeks per month—or over half of the month—in Mexico.  The Government further proffered in its brief and

at the hearing that Castaneda has a girlfriend in Mexico, and that he resides in an apartment there.

With respect to any legitimate employment, Castaneda told Pretrial Services that he is "self-employed" with Alegria Landscaping. The Government indicates, however, that a search warrant was executed after Castaneda's arrest and the search did not reveal any landscaping-related equipment. *Id*. at 9. The Government asserts that its investigators "have been unable to find a record of this landscaping company." *Id*. Moreover, Castaneda told Pretrial Services that he was "uncertain" of his expenses and that his wife manages their finances. *Id*. at 9. When Pretrial Services asked Alegria about the finances, she told them she was also uncertain of Castaneda's monthly earnings and was unaware of any information pertaining to Castaneda's finances. *Id*.

Castaneda was first charged with violations of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) in a criminal complaint issued on January 17, 2018. *See* ECF 1. A warrant was immediately issued for Castaneda's arrest, and, after some difficulty, law enforcement located and arrested Castaneda on January 30, 2018. *See* ECF 4. At the time of his arrest, Castaneda was staying in a motel room in San Jose, where he was found with $5,061 in cash on his person as well as $29,000 in cash hidden in his vehicle. *Id*. at 8. Castaneda made his initial appearance on January 31, 2018 before United States Magistrate Judge Howard Lloyd, and Castaneda was held in custody pending a detention hearing on February 8, 2018 before Judge Cousins. *See* ECF 5.

On February 8, 2018, Castaneda and Martinez were indicted by a grand jury charging them with drug trafficking related offenses. *See* ECF 10 ("Indictment"). Castaneda was charged with six counts, including: Conspiracy to Manufacture, Distribute, and Possess With Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A) (Count 1); (2) Manufacture and Possession With Intent to Distribute Methamphetamine, in violation of §§ 841(a)(1) and 841(b)(1)(A), and 18 U.S.C. § 2 (Count 2); Distribution and Possession With Intent to Distribute Methamphetamine, in violation of §§ 841(a)(1) and 841(b)(1)(A) (Counts 3, 4, and 5); and Conspiracy to Import Methamphetamine, in violation of 21 U.S.C. §§ 963, 952(a), 960(a)(1) and 960(b)(1) (Count 6).

At the detention hearing on February 8, 2018 before Judge Cousins, Pretrial Services submitted a Pre-Bail Report ("Pretrial Report") detailing their investigation into Castaneda, and

1    recommending pretrial release with ten (10) special conditions of release as well as an unsecured

2    $100,000 bond co-signed by Castaneda's wife, Alegria, and sister, Lucia Castaneda Sanchez. The

3    Government submitted a factual proffer prior to the hearing and supplemented the proffer with

4    oral argument in support of detention. *See* ECF 6. Defense counsel argued at the detention

5    hearing that pretrial release was appropriate in light of Castaneda's ties to San Jose, and the

6    support of his family members who were in attendance and willing to act as sureties.

7            Judge Cousins incorporated the Pretrial Report into his findings, and ultimately found that

8    the defense had rebutted the statutory presumption that Castaneda was a flight risk, which is

9    discussed further below. Finding that conditions existed to reasonably assure Castaneda's

10   appearance, Judge Cousins imposed Pretrial Services' recommendation, ordering Castaneda's

11   release on a $100,000 unsecured bond, as well as ten conditions of release including electronic

12   monitoring.

13           The Government immediately requested and was granted a stay of the release order until

14   February 9, 2018 to permit the Government to seek review in this Court. *See* ECF 8. The

15   Government then filed the instant motion for revocation of the order of release, and this Court held

16   a status conference on February 9, 2018. *See* ECF 13. The Court ordered a response to the

17   motion from the defense, and set a hearing on the Government's motion for February 13, 2018 at

18   8:00 A.M. The Court also continued the stay of the release order pending this Court's

19   determination of the Government's motion. *Id*.

20           On February 13, 2018, the Court heard oral argument on the Government's motion and

21   considered the evidence proffered by defense counsel and the Government. Pretrial Services also

22   attended the hearing and revised its position with respect to adequate conditions of release. The

23   Court made factual findings on the record, and GRANTED the Government's motion for

24   revocation of Judge Cousins' order of pretrial release. This Order memorializes those factual

25   findings and the Court's determination that although Castaneda has rebutted the statutory

26   presumption that he is a flight risk, the Government has satisfied its burden to demonstrate by a

27   preponderance of the evidence that no set of conditions will reasonably assure Castaneda's

28   appearance. Accordingly, this Court ORDERS Castaneda's detention pending trial in this matter.

4

## II. LEGAL STANDARD

This Court reviews *de novo* a magistrate judge's order regarding pretrial detention. *United States v. Koenig*, 912 F.2d 1190, 1192 (9th Cir. 1990) ("There are ample reasons, then, for concluding that the district court's review of a magistrate's detention order is to be conducted without deference to the magistrate's factual findings.")

Pursuant to the Bail Reform Act of 1984, 18 U.S.C. §§ 3141, *et seq.*, persons facing trial are to be released under the least restrictive condition or combination of conditions that will "reasonably assure" the appearance of the person as required and the safety of the community. *See* 18 U.S.C. § 3142(c)(2); *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991); *United States v. Motamedi,* 767 F.2d 1403, 1405 (9th Cir. 1985). "Only in rare circumstances should release pending trial be denied, and doubts regarding the propriety of release should be resolved in the defendant's favor." *Gebro,* 948 F.2d at 1121 (citing *Motamedi,* 767 F.2d at 1405). On a motion for pretrial detention, the Government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk, and by clear and convincing evidence that the defendant poses a danger to the community. *Gebro,* 948 F.2d at 1121; *Motamedi*, 767 F.2d at 1406-07. Here, the Government only moves for revocation of Judge Cousins' release order on the grounds that Castaneda is a flight risk. The parties do not dispute that the Government's burden is to show that Castaneda is a flight risk by a preponderance of the evidence.

Section 3142(g) of the Bail Reform Act contains the following factors to evaluate whether there are any conditions of release that will "reasonably assure" a defendant's future appearances. 18 U.S.C. § 3142(g). These factors include: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the person including: (A) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and (4) the nature and

1  seriousness of the danger to any person or the community that would be posed by the defendant's

2  release. *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986); *Motamedi,* 767 F.2d at 1407.

3  "Of these factors, the weight of the evidence is the least important, and the statute neither requires

4  nor permits a pretrial determination of guilt." *Gebro*, 948 F.2d at 1121 (citing *Winsor,* 785 F.2d at

5  757); *see also* Motamedi, 767 F.2d at 1408.  Evidence of guilt is relevant only in terms of the

6  likelihood that the defendant will fail to appear or will pose a danger to the community.  *Winsor*,

7  785 F.2d at 757.

8         Section 3142(e) contains a rebuttable presumption that the parties agree is applicable in

9  this case.  *See* 18 U.S.C. § 3142(e).  The rebuttable presumption is triggered where the judicial

10  officer finds there is probable cause to believe that the defendant committed a certain offense

11  involving drugs or violent crimes identified in the statute.  *See* 18 U.S.C. § 3142(e)(3).  When the

12  presumption applies, it is presumed that no condition or combination of conditions exists that will

13  reasonably assure the appearance of the person as required and the safety of the community.  *Id*.

14  The presumption imposes a "burden of production" on the defendant to put forth "some credible

15  evidence" in order to rebut it.  *See United States v. Thomas*, 667 F. Supp. 727, 728 (D. Or. 1987)

16  ("The statute requires that the defendant produce some credible evidence forming a basis for his

17  contention that he will appear and not pose a threat to the community in order to rebut the

18  presumption") (citing *United States v. Jessup*, 757 F.2d 378 (1st Cir.1985)); *see also United States

19  v. Ward*, 63 F. Supp. 2d 1203 (C.D. Cal. 1999).[1]

20         As then Circuit Judge Breyer analyzed in *Jessup*, the burden of persuasion to demonstrate

21  risk of flight by a preponderance of the evidence always remains with the Government.  757 F.2d

22  at 381-384, 389.  However, once the defendant offers evidence to rebut the § 3142(e) presumption,

23  the presumption is not "erased" but rather it "remains in the case as an evidentiary finding

24  militating against release, to be weighed along with other evidence relevant to factors listed in

---

[1] Neither the parties nor the Court could find Ninth Circuit authority directly addressing the
question of the defendant's burden of proof to overcome the 18 U.S.C. § 3142(e) presumption.
*See* ECF 16.  However, *Jessup* is considered to be the leading authority regarding § 3142(e), and
numerous other circuit courts as well as district courts within the Ninth Circuit have adopted its
holding that only the burden of production shifts to the defendant who can rebut the presumption
by producing "some evidence" to the contrary. 757 F.2d at 384.

§ 3142(g)." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (citing *United States v. Dominguez,* 783 F.2d 702, 707 (7th Cir.1986)); *see also Jessup*, 757 F.2d at 387 ("The individual characteristics of a case and the precise weight to be given the presumption are matters for a magistrate to take into account within the framework of factors set out in § 3142(g).")

Finally, the Bail Reform Act requires that all detention orders "include written findings of fact and a written statement of the reasons for the detention." § 3142(i)(1). This protects the defendant from a weighing of factors that is arbitrary, or not in keeping with the Bail Reform Act. *Jessup*, 757 F.2d at 384.

## III. DISCUSSION

The Government moves this Court to revoke Judge Cousins' release order because Castaneda is a flight risk and no condition or combination of conditions will reasonably assure his appearance. *See* Mot. at 11.[2] The Court first considers the applicability of the rebuttable presumption in § 3142(e), and whether Castaneda has satisfied his burden of production to put forth some credible evidence that he is not a flight risk. Finding that Castaneda has rebutted the presumption, the Court weighs the presumption as an evidentiary finding militating against release to be considered along with other evidence relevant to the factors listed in § 3142(g).

### A. Rebuttable Presumption

The parties do not dispute that the § 3142(e) presumption applies in this case. *See* Mot. at 11; Opp'n at 3. Violations of the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801, *et seq.*, for which a maximum term of imprisonment of ten years or more is prescribed, fall within one of the four listed offense groups in § 3142(e). Castaneda is charged with violating 21 U.S.C. § 841(a) (distribution of controlled substances), which is punishable by over ten years' imprisonment under the CSA. Accordingly, if a judicial officer finds there is probable cause to believe that Castaneda has committed a violation of § 841(a), the § 3142(e) presumption is triggered. The Court need not make an independent determination of probable cause—a grand

---

[2] The Government does not and need not argue that Castaneda is a danger to the community. Detention is appropriate where a defendant is *either* a danger to the community or a flight risk, and the Government need not prove both. *See Motamedi*, 767 F.d at 1406.

1  jury indictment itself is sufficient to establish probable cause for purposes of invoking the

2  presumption. *See United States v. Ward*, 63 F. Supp. 2d 1203, 1209 (C.D. Cal. 1999) (collecting

3  cases).

4        Castaneda was indicted by a grand jury on February 8, 2018, charging him with six counts

5  of drug trafficking offenses including violations of 21 U.S.C. § 841(a), punishable by over ten

6  years' imprisonment. *See* ECF 10. Because the indictment itself is supported by probable cause,

7  the Court finds that there is probable cause to believe that Castaneda committed a violation of

8  § 841(a). *See* § 3142(e)(3)(A). Once the presumption is triggered, the Court presumes that

9  Castaneda is a flight risk and no conditions exist to reasonably assure his appearance, and

10  Castaneda has the burden of producing or proffering "some credible evidence" to rebut the

11  presumption. *See Thomas*, 667 F. Supp. at 728; *see also Ward*, 63 F. Supp. 2d at 1216.

12        The Government argues that Castaneda has not rebutted the presumption, and the Court

13  must conclude that no condition or combination of conditions will reasonably assure Castaneda's

14  appearance. *See* Mot. at 11-12. The Court disagrees with respect to this point. The defense has

15  put forth some credible evidence that Castaneda is not a flight risk—in particular, that Castaneda's

16  wife, three children, and other family members live in San Jose, California. The Court finds that

17  Castaneda does have longstanding ties to this community, having lived here his entire life after

18  being born in Stockton, California. Castaneda's mother and several of his siblings reside in San

19  Jose. Moreover, although his mother, Edelmira Chavez, was not willing to assist Castaneda with

20  bail resources, his wife Alegria and sister Castaneda Sanchez were willing to assist by co-signing

21  a $100,000 bond for Castaneda's release. However, both Alegria and Castaneda Sanchez

22  informed Pretrial Services that they do not have any property or cash to post in order to secure the

23  bond.

24        The Court finds that Castaneda has been married to Alegria since 2008. The couple has

25  known each other since 1998 and they have three children ages fifteen (15), thirteen (13), and

26  seven (7). Although the Court has serious reservations regarding the stability of Castaneda's

27  living conditions, discussed further below, the Court has no reason to doubt that Castaneda is a

28  dedicated father to his three children. At the February 13, 2018 hearing, the Court further noted

the attendance of several friends and family members of Castaneda, demonstrating his ties to the local community.

The Government argues that Castaneda's proffer that he (1) has family members in the area and (2) that he has ties to the community because he has always lived here, is insufficient to rebut § 3142(e)'s presumption that Castaneda is a flight risk. *See* Mot. at 12. According to the Government, "[s]hould each defendant who distributes narcotics in San Jose be released on bond because they grew up in the area and have nearby family members, the presumption would have little effect in this Court." *Id*. The Court understands the Government's concerns regarding large scale drug traffickers who rely on their ties to the community—even if those ties are not productive ones—to rebut the statutory presumption that they are a danger or a flight risk. Yet the Court disagrees with the Government that the defendant's burden of production is so high that it cannot be satisfied by a clear showing that the defendant has lived here for his entire life, has three minor children who also live here, and has several family members who appear in court to support him and are willing to co-sign a bond as sureties for his appearance. The Court finds that Castaneda has put forth "some evidence that he will not flee" if released under the conditions imposed by Judge Cousins. *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (citing *Dominguez*, 783 F.2d at 707).

For the foregoing reasons, as well as those stated on the record at the February 13, 2018 hearing, the Court finds that Castaneda has rebutted § 3142(e)'s presumption that he is a flight risk. The presumption does not disappear, however, and the Court proceeds to weigh the presumption with the other evidence in light of the factors set forth in § 3142(g).

### B. Weighing the Presumption Along with Other Evidence Relevant to Factors Listed in § 3142(g)

As discussed above, Section 3142(g) of the Bail Reform Act contains four factors to be considered by the Court in determining whether there are conditions of release that will reasonably assure Castaneda's appearance. These factors include: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the person including: (A) the defendant's character, physical and mental

condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g); *Motamedi,* 767 F.2d at 1407.

The Government retains the burden of showing by a preponderance of the evidence that there is no condition of release or combination of conditions that will reasonably assure Castaneda's appearance at future proceedings.  *See Motamedi,* 67 F.2d at 1406-7.  Castaneda argues that the Government has not satisfied its burden and instead relies on an often rejected "we can't be sure" argument regarding whether Castaneda will flee to Mexico if he is released under the "stringent" conditions in Judge Cousins' order.  *See* Opp'n at 3-4.  The Government argues that even if Castaneda has rebutted the presumption, when the presumption is weighed along with other evidence relevant to the factors listed in § 3142(g), the need for pretrial detention becomes evident.  *See* Mot. at 12-15.

### 1.     The Nature and Circumstances of the Offense Charged

The first factor listed in § 3142(g) requires the Court to consider the nature and circumstances of the offense charged, "including whether the offense…involves…a controlled substance." 18 U.S.C. § 3142(g)(1).  There is no question that the six counts of drug trafficking offenses brought against Castaneda are serious, and that Castaneda faces at least ten (10) years in prison and up to mandatory life imprisonment under the statutes that he is charged with violating. The Government proffered that under the Sentencing Guidelines, the recommended sentence for Castaneda in light of his criminal history is life imprisonment.  *See* Mot. at 13.  The Government argues that these charges not only trigger the rebuttable presumption which still carries weight, they also give Castaneda the incentive to flee to Mexico where he has strong personal connections and a still-functioning, lucrative drug trafficking operation.  *Id*.  Although the defense argues that Castaneda previously appeared at court hearings related to his prior drug trafficking cases, the

Government points out that these cases were prosecuted at the state level and did not provide for the severe sentences that Castaneda faces in this case. *Id*. The Court finds that the nature and circumstances of the offenses charged weigh in favor of pretrial detention.

### 2. The Weight of the Evidence against Castaneda

Next, although it is the "least important" factor, the Court considers the weight of the evidence against Castaneda. § 3142(g)(2); *Gebro*, 948 F.2d at 1121. The Government argues that there is "overwhelming" evidence against Castaneda. *See* Mot. at 13. In light of the audio and video recordings, confidential human source, and other information obtained by the investigators, the Court finds that the weight of the evidence makes it likely that Castaneda will fail to appear and will flee to Mexico rather than face trial on these charges in the United States.

### 3. Castaneda's History and Characteristics

The Government has put forth significant evidence regarding Castaneda's history and characteristics that demonstrate the insufficiency of the release conditions imposed. Pursuant to § 3142(g)(3), the Court must take into account available information concerning Castaneda's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." § 3142(g)(3). Although the Court found that Castaneda rebutted the § 3142(e) presumption with a showing of his ties to the community and family in the area, the Court retains serious concerns regarding the nature and stability of those ties.

For example, Castaneda represented that should he be released from custody, he would live at home with his wife and their three children in San Jose. Yet the Government contends that Castaneda was recently kicked out of the house that he shares with his wife, and he was arrested at a motel with his passport and cash in excess of $5,000 found on his person. *See* Mot. at 13. In fact, when Castaneda was arrested he requested that law enforcement agents call his wife Alegria to alert her to his arrest and to contact his attorney. *Id*. at 10. When agents relayed the message to Alegria, she responded that the agents should tell Castaneda's girlfriend to call his attorney instead. *Id*. At the hearing on February 13, 2018, Alegria offered to speak to the Court in support

of her husband's release.  Alegria's testimony, made under oath, was vague at best and was often misleading.  She testified that Castaneda had never moved out of their house or stayed elsewhere.  When confronted by the Court with the Government's evidence that Castaneda was arrested while staying at a motel, Alegria altered her testimony to say that Castaneda only spent one night in a hotel on January 29, 2018 after she kicked him out of the house.  Alegria made no mention of the fact that her husband admitted to spending the majority of his time in Mexico.

Importantly, the Court finds that Castaneda's ties to Mexico are at least equally as strong as his ties to this community.  The evidence shows that Castaneda spends two to three weeks *per month* in Mexico, and that he has a girlfriend and an apartment there.  In terms of past conduct, the evidence shows that if released, Castaneda would likely go to Mexico.  Castaneda's drug operation and network of suppliers of narcotics and stash houses allows him to make money in Mexico.  The Government proffers that it has recordings of phone calls and meetings that show Castaneda's "preexisting infrastructure in Mexico."  The Court finds that Castaneda lives in Mexico part time, where he essentially has a second life including a significant other, although there is no indication that he has any children in Mexico.  This evidence calls into question the strength of Castaneda's ties to his family in the United States.  In any event, Castaneda's standard of living in Mexico would provide a better means of supporting his family here than he could provide by staying in the United States where he faces life imprisonment.  The evidence of Castaneda's ties to Mexico weighs heavily in favor of finding that Castaneda will flee to Mexico if he is released, and there are no conditions to reasonably assure his appearance in these proceedings.

The Court also credits the Government's evidence that the majority of Castaneda's "ties" to the San Jose community are not positive ones.  The Government's proffer shows that he has supplied methamphetamine and other controlled substances to this community over a long period of time, and even operates "stash houses" in residential neighborhoods.  In particular, the Government points to Castaneda's stash house that caught on fire while there were children present in the house.  Although the Court must be careful not to allow danger to the community to weigh into its assessment of Castaneda's flight risk, the Court finds that this evidence counters the argument put forth by the defense that Castaneda has strong and positive ties to the community.

Castaneda's employment situation and financial resources also present serious concerns because they demonstrate his inability to be forthcoming and to comply with any conditions of release. Although Castaneda told Pretrial Services that he was self-employed working for Alegria Landscaping out of his home, there has been no verification of that employment. In addition, neither Castaneda nor Alegria provided any information regarding Castaneda's earnings or finances. In light of this evidence, the Court finds that Castaneda is not employed. Although Castaneda indicated willingness to seek "traditional" employment and that he has connections in the construction business, his prior criminal record poses a hurdle to securing employment. More importantly, Castaneda and his family have demonstrated through their evasive answers to Pretrial Services and this Court, that Castaneda cannot be counted on to comply with conditions of release and appear in Court, and his family members would do nothing to ensure that appearance.

Moreover, the Government's evidence that Castaneda has access to large amounts of cash that is not reported and difficult to trace raises doubts as to whether an unsecured $100,000 bond would adequately secure Castaneda's appearance. The Court finds that Castaneda's financial resources from his drug trafficking proceeds provide him with enough to repay family members who may lose it by co-signing the bond. The Government also proffered evidence that the proposed sureties—Alegria and Castaneda Sanchez—are insufficient in that they have no incentive to keep Castaneda in the country.

Both Alegria and Castaneda Sanchez told Pretrial Services that they do not have any property or cash to post, which the Government's evidence calls into question. Castaneda Sanchez was also untruthful to Pretrial Services, reporting that she only had two prior arrests but no convictions. *See* Mot. at 10. In fact, Castaneda Sanchez has several convictions and arrests as well as two probation violations. *Id*. The Government put forth evidence that Castaneda Sanchez's criminal history is in line with her actions related to this investigation. On January 25, 2018, officers were conducting surveillance on public streets for the purpose of locating Castaneda to arrest him, when Castaneda Sanchez approached an officer's van, aggressively yelling profanity and using her fist to pound on the windows of the van. *Id*. at 10-11. In light of the evidence, the Court finds that the two proposed sureties on the bond, Alegria and Castaneda Sanchez, do not

13

show any indication that they would stop Castaneda from leaving the country or alert the authorities if he violated any conditions of release.

The Court also takes into account Pretrial Services' statement at the hearing that it has modified its recommendation regarding conditions of release. First, Pretrial Services recommended a "lockdown" whereby Castaneda must remain in the residence rather than only having a curfew. Second, in light of the evasive responses from Castaneda's family members, Pretrial Services recommended that any bond be secured by substantial property. However, the only person who showed any willingness to post property to secure the bond is Castaneda's mother-in-law, Carmen Gonzales. When Pretrial Services was finally able to contact her, Gonzales was unable to provide any information about the property she offered to post. Instead, Gonzales directed Pretrial Services to speak to Alegria, who had information about the value and ownership of the property.

Alegria's testimony at the hearing was vague with respect to her family's ownership of two properties in Modesto, California. Alegria explained that the properties belong to her mother, Gonzales (Castaneda's mother-in-law), and were held in a trust that Alegria could not access. Ultimately, Alegria and Gonzales were either unwilling or unable to provide any information about the property offered to secure the bond. The Court therefore has no information regarding who has the ability to encumber the property or if the property is sufficient to cover the amount of the bond. Although the Court recognizes that it could condition Castaneda's release upon receipt of a satisfactory title report and appraisal of the property, the evasive and untruthful answers of Castaneda's family members indicate that they have no incentive to ensure that Castaneda appears in this case.

The Court also finds that the electronic monitoring imposed by Judge Cousins' order would not sufficiently deter Castaneda from leaving. Although Castaneda surrendered his passport, there are no outbound inspections from the United States to Mexico, and he could easily cross the border without detection. Representatives from Pretrial Services indicated that although they are alerted when a defendant removes the electronic monitoring device or does not return to the home when required, there are no immediate actions that Pretrial Services can take to stop the

14

defendant from leaving the country other than notifying the Court and requesting an arrest warrant. The Court finds that even a head start of a few hours could easily allow Castaneda to flee to Mexico.

Castaneda's criminal history also indicates that he is a flight risk. *See* § 3142(g)(3). Castaneda has two prior drug-related convictions, and his most recent arrest shows a continued pattern of drug trafficking. He now faces significant time in jail, in what the Government has calculated as a life sentence under the Guidelines. The Court finds that although there is no evidence of prior failure to appear for court hearings in state court, Castaneda's criminal history as it relates to potential sentence enhancement gives him an incentive to flee if he is released.

The Court also finds that Castaneda has no history relating to drug or alcohol use, and that he has appeared at court proceedings in connection with his past drug trafficking offenses. Although, as discussed above, Castaneda faced significantly less time in jail during the prior proceedings at the state level. The Court also finds that at the time of the arrest in this case, Castaneda was not on probation, parole or other release pending trial for another offense. *See* § 3142(g)(3)(B). While these are mitigating factors, the Court finds that the weight of the evidence of Castaneda's history and characteristics indicates that his appearance cannot be reasonably assured in this case, even under stringent conditions.

### 4. The Nature and Seriousness of the Danger Posed by Release

Because the Government does not argue that Castaneda poses a danger to the community if he is released, the Court need not consider the fourth factor involving the nature and seriousness of the danger to any person or the community posed by the defendant's release. *See* § 3142(g)(4).

### 5. Conclusion

The Court has considered whether there are conditions of release, or combination of conditions, that could ensure Castaneda's appearance in this case. The Court has considered the combination of 10 conditions as modified by Pretrial Services to determine whether these stringent requirements would be sufficient. Based on the Court's factual findings, the Court concludes that neither these 10 conditions or any additional ones would be sufficient. This conclusion is based on the Court's weighing of the presumption that Castaneda is a flight risk in connection with other

15

evidence relevant to the § 3142(g) factors, including: Castaneda's lack of employment, his familiarity with Mexico and the life he has created for himself there, the lack of incentive of any of Castaneda's family members to ensure his appearance, Castaneda's criminal history, the seriousness of the offense, the weight of the evidence against him, and the fact that Castaneda now faces a life sentence in federal prison. The Court finds that the Government has satisfied its burden to show by a preponderance of the evidence that no condition or combination of conditions exist to reasonably assure Castaneda's appearance at further proceedings in this case. *See* 18 U.S.C. § 3142(c)(2); *Gebro*, 948 F.2d at 1121; *Motamedi*, 767 F.2d at 1405.

## IV. ORDER

For the foregoing reasons, as well as those stated on the record at the February 13, 2018 hearing, the Court finds that pretrial detention is warranted. Accordingly, the Government's motion for revocation of the order for pretrial release is GRANTED.

Dated: February 14, 2018

_____
BETH LABSON FREEMAN
United States District Judge